# HARTEN v. LOFFLER.

CONTRACTS, INTERPRETATION OF; PAROL EVIDENCE; PATENT AND LATENT
AMBIGUITIES; STATUTE OF FRAUDS; PLEADING; VARIANCE; MEASURE
OF DAMAGES; EVIDENCE; INSTRUCTIONS TO JURY; INTENT.

1. Contracts, where their meaning is not clear, are to be construed in the
light of the circumstances surrounding the parties when they were
made, and the practical interpretation which they, by their conduct,
have given to the provisions in controversy; and the courts are dis-
posed to uphold a contract drawn by a person unskilled in the use
of legal terms, when in the contract there appears a reasonably
sufficient description of its subject-matter.

2. Extrinsic evidence is not admissible to explain a patent ambiguity, that
is, one apparent on the fact of the instrument, but is admissible to
explain a latent ambiguity, that is, one not apparent on the face of
the instrument, but one arising from extrinsic evidence; and parol
evidence is admissible to give effect to a written instrument by apply-
ing it to its subject-matter. (Following Whelan v. McCullough, 4 App.
D. C. 58, and Okie v. Person, 23 App. D. C. 170.)

3. Parol evidence is admissible to show that a written contract for the
sale of land and its improvements embraced all of the land owned and
occupied by the vendor, and not a part only, where the written contract
of sale described the land as fronting on a named avenue, "about" 60
feet, with a depth of "about" 200 feet, and when those exact measure-
ments would cut off one seventh of a dwelling house on the land and
the narrow apex of a triangular lot, and all the other terms of the con-
tract describing the property sold would include the whole dwelling
house and the whole lot. Such a case presents an instance of latent
ambiguity.

4. For most purposes the statute of frauds has neither added to nor taken away from the stringency of the rules of the common law in regard to the admission of parol evidence to affect written contracts.

5. There is no variance between the contract sued on and that offered in evidence, where the former describes the land involved as "a certain tract of land situate on what is known as Brightwood avenue near Battle Ground Cemetery," and the latter describes it as "located on Brightwood avenue, near Battle Ground Cemetery, fronting on Brightwood avenue about 60 feet, with a depth of about 200 feet."

6. In an action by the vendee against the vendor for refusal to consummate a contract for the sale of land and improvements, and a saloon business conducted thereon and its good will and license, the measure of damages is the difference between the purchase price and the market value, at the time of the contract of sale, of the things agreed to be sold.

7. In such an action, evidence offered by the vendee is admissible to show the value not only of the land and improvements, but also of the business, good will and license; and it is proper to admit a deed tendered by the vendee to the vendor in connection with a tender of the purchase money; and also the testimony of a person who, before the sale, communicated to the vendee the vendor's desire to sell the land and business, which induced the negotiations between the parties.

8. In an action by the vendee against the vendor on a contract for the sale of all of defendant's land and a liquor business conducted on part of it, at a specified price, for refusal to consummate the sale, where the defense is that the contract was to sell that part only of the land which contained the saloon, testimony offered by the defendant to show that the defendant, prior to the contract, in negotiations with others had placed such price on that part of the property, reserving to himself the remainder; that such part was sufficient on which to carry on the saloon business; and that, before and at the time the contract was made, the understanding between the vendor and his wife was that only a part of the land was to be sold,—is all inadmissible.

9. In such a suit, an instruction asked by the defendant, requiring the jury to ascertain what the fair cash value was of that portion of the real estate upon which the saloon business was conducted, is properly refused, the question for the jury being whether the defendant had contracted to sell the whole property for a specified price.

10. Where, in an action for the breach of a contract, the question is what the parties meant by the contract, instructions limiting the jury to

the consideration of the intent of one of the parties only, are erroneous, as two minds must meet to make a contract.

No. 1727.  Submitted March 19, 1907.  Decided May 7, 1907.

HEARING on an appeal by the defendant from a judgment of the Supreme Court of the District of Columbia on verdict in an action for the alleged breach of a contract.  *Affirmed.*

The Court in the opinion stated the facts as follows:

The appellee, Ernest Loffler, sued the appellant, Hugh Harten, for breach of contract.  The appellant owned a parcel of land on Brightwood avenue, or 7th street road, ½ mile north of Brightwood, in this District.  He there kept a saloon and country tavern in a building erected on a lot triangular in shape, fronting 85 feet on 7th street road.  As appears in the diagram, the front line and the south line of the triangle formed a rectangle, and the south line was 224 feet long.  The hypothenuse, or north line, was 239½ feet long.  The improvements fronted on the 7th street road, and comprised a frame building standing 51½ feet along the road.  At the northeast corner was a small lot of ground with a front of 13½ feet, the house line, running back at right angles, nearly joined the north line, making this lot a triangle.  On the south side was a driveway about 20 feet wide.  At the south end of the building was a bar room, and adjoining it on the north was a serving room for guests.  A hallway came next on the north, and on the north side of the hall was a store room for liquors, above which, on the second story, was a ball room.  The remaining upper rooms of the house were used as living rooms for the family of the appellant.  Back of the store room on the ground floor, on the north line of the premises, was a kitchen, and in the rear of that, on the same north line, was a billiard room for guests.  In the rear of these structures, and all adjoining the north line, were various stables,

sheds, and outhouses. The accompanying diagram will help
to explain the shape of the lot and the location of the buildings.

Beginning at the south line of this parcel of land, if one
measured 60 feet northward on the front line, the end of the
60-foot line was at a point in the hall doorway near the middle
thereof, and only the south 40 feet of the building would be in-
cluded within the 60 feet, while 11½ feet of the north end of
the building and a small triangular lot before described would be
excluded. All the premises were occupied and used in their
entirety by the appellant.

From the record it appears the appellant told Charles D.
Hood, a liquor dealer, that he wished to sell his property and
business for $12,000; that he wished to get out of the neigh-
borhood because he could not do business there, and the pro-
tests made it difficult to renew his license. Hood communicated
this information to the appellee, who sent his agent to purchase
the property. This man introduced himself as a real-estate
agent to the appellee, and asked him what he wanted for the

place, and the appellant said he would take $12,000 for the
property, fixtures, and everything excepting pool tables and
stock. Later this agent called with the appellee, who came as
a prospective purchaser, and the appellant, with knowledge of.
that, conducted the appellee over the premises, showing him over
the whole building, upstairs and downstairs and into the kitchen
and billiard room.

Several days later, on April 27, 1905, after the appellee
had sold his saloon in Georgetown, he notified the appellant that
he would visit him to "make the deal;" and the two parties and
this agent met on the premises the same afternoon. The price
asked by the appellant was finally agreed to, and it was agreed
that Mr. Richard, a wholesale liquor dealer, a friend of both
parties, who had helped the appellee to sell his saloon and had
driven out with him, should write the agreement.

During these negotiations the appellant did not suggest that
he did not intend to sell the whole premises, or that he intended
to reserve any portion, but said that the stock of liquors and
the pool or billiard tables were not included in the sale. Richard
wrote the following paper, which was signed by the appellant
and his wife: ·

                                             April 27, 1905.

· For and in consideration of the sum of twelve thousand dol-
lars, two hundred and fifty dollars whereof is hereby acknowl-
edged, I hereby agree to sell to Ernst Loffler the property, good
will, license, and fixtures, located on Brightwood avenue, near
Battle Ground Cemetery, fronting on Brightwood avenue about
60 feet, with a depth of about two hundred feet, title and trans-
fer of license guaranteed or deposit refunded. I agree to use
my best efforts to secure the signers for the transfer of said
license, and to give said Loffler a clear title to all of above prop-
erty.

                                        Hugh Harten.
                                        Julia Harten.

Richard testified when he had written as far as "license and fixtures located on Brightwood avenue, near Battle Ground Cemetery," he turned and asked, "What is the size of this place?" and there followed a discussion between the two Lofflers, Harten, and himself. One of the party suggested it was about 60 feet, and Harten said, "That is about right," and Richard so wrote it. Nothing was said by Harten or by Loffler to indicate that only a portion of the premises were to be sold, and it was understood that the whole of the premises was covered by the description.

The appellee testified that in this discussion the appellant stated that the lot had about 60 feet front and about 200 feet in depth; that when Richard was writing the contract "he asked Mr. Harten how much ground was in this place. We all were guessing, and Mr. Harten said put it down about 60 feet front, and about 200 feet deep, and Mr. Richard said all right, we will put it down that way." That when the paper had been prepared, Harten called to Mrs. Harten and said to her, "I want you to sign this contract, I sold the place." Before the contract was prepared, and while they were discussing the price, the appellant said to the appellee, "I will sell everything here."

Andrew Loffler, the agent, testified that "when we came down to describe the place, Harten told him it was described in the license. Harten brought the license. The description in the license is 'opposite Battle Ground Cemetery.' Richard put that down, and said we should describe the property a little plainer; he said, 'What is the square number or what is the number of the lot? Harten said, 'There is no number to the lot;' he did not know the number of the square, so he said, 'We had better put down the number of feet you have here.' Somebody asked me what my idea was, and I said about 60 feet; I looked out of the window to size it up; Mr. Loffler made a guess, and we all made a guess. Harten said put down about 60 feet; we estimated about 60 feet front and about 200 deep."

Peter J. May testified that he met the appellee and his wife at Harten's place on the day after the sale, and Harten stated that Loffler had bought him out, that he had sold the whole

place, everything, ground and all, and was going out of business; and this witness and Mrs. Loffler were shown through the house by Harten, who then described how she was going to fix up the house; and Harten conducted them into many rooms, including the liquor store room and the ball room above it. Later, the appellee asked the appellant to indorse the license paper and sign the application for its transfer. The appellee or his agent or attorney frequently repeated this request. Harten always refused to sign, at one time saying he did not want family trouble. Finally, when urged by the appellee and his attorney, and being charged with attempting to back out of his agreement, the appellant replied, "I won't sign a damn thing."

Subsequently the appellee tendered to the appellant the purchase money and a deed of the premises, and without reading it the appellant refused to sign, and immediately after offered to the agent Loffler $100 "to get me out of this."

[The declaration contained three counts, in each of which it was alleged that the defendant, on April 27, 1905, agreed in writing to sell to the plaintiff, for $12,000, a certain tract of land, situate on what is known as Brightwood avenue, near Battle Ground Cemetery in the District of Columbia together with the good will, license, and fixtures of the saloon business conducted by the defendant on said land, all which was owned by the defendant; that the plaintiff then paid him $250 on account, and afterward tendered him the remainder of said $12,000, but the defendant refused to make conveyance in accordance with the agreement. The second and third counts differed from the first by the addition of averments that the plaintiff had lost the use and profits of the property. The third count differed from the others by the addition of averments that the plaintiff presented for execution a properly prepared conveyance, etc.

To each count the defendant pleaded the general issue and also a plea of set-off. In the latter plea he stated the location of the tract owned by him as in the declaration; that the entire tract had a width of about 85 feet at the front on said avenue, and a depth of about 235 feet from front to rear; that the southern

60 feet at said front by a depth of 200 feet were improved by buildings in which he carried on his bar-room business, and which contained fixtures used in the business; that the plaintiff, on April 27, 1905, agreed with him in writing to purchase from him for $12,000 the said southern 60 feet by 200 feet, together with the said license and fixtures and the good will of said business, and then paid $250 on account, but refused to pay the remainder of said $12,000 although thereunto requested and although the defendant duly offered, etc., to perform his part of the agreement.

The plaintiff joined issue upon the first plea, and to the second plea replied not indebted and *non assumpsit,* upon which replications the defendant joined issue, and upon these issues the case was tried.

At the trial, the following special instructions, asked by the plaintiff, were granted over the objections of the defendant, who excepted to the action of the court in overruling his objections:

"1. If the jury believe from the evidence that the object of the parties to this suit was the sale and purchase, among other things, of the defendant's parcel of land, triangular in shape, fronting 85 feet on Brightwood avenue, and the two other lines thereof having a depth of about 224 feet and 239.50 respectively, described in the evidence herein, and that in the written memorandum of said sale the words 'about 60 feet,' relating to the front of said property, and the words 'about 200 feet,' relating to the depth thereof, were inserted as estimate only of the frontage and depth, respectively, of said parcel of land, and not to limit the quantity of land sold, or the front or depth lines of said property, then the said contract is to be interpreted as applying to the particular parcel of land in respect to which the parties were dealing.

"2. If the jury believe from the evidence that the defendant agreed in writing to sell to the plaintiff the good will, license, and fixtures of the business carried on by him, located on Brightwood avenue, near Battle Ground Cemetery, as also the real estate and improvements upon and in which the said business was carried on, for the gross sum of $12,000; that the plain-

tiff paid to the said defendant the sum of $250 on account of
the purchase money aforesaid; that plaintiff tendered himself
ready and willing, and was able, to comply with the terms of ~
said sale, and pay the purchase money aforesaid; and that the
defendant refused to transfer and convey to the plaintiff the
said good will, license, fixtures, and real estate aforesaid,—then
the plaintiff is entitled to recover, notwithstanding they may
find in the written contract for sale the frontage and depth of
said real estate was erroneously stated.

"3. If the jury find from the evidence that, as a result of the
negotiations and attending circumstances between the plaintiff
and the defendant, it was understood and agreed between them
that the defendant should sell to the plaintiff and the plaintiff
should purchase from the defendant, among other things, the
whole of the real estate, situate on Brightwood avenue, near
Battle Ground Cemetery, upon which the defendant carried on
his business, and that the defendant agreed to sell, and the plain-
tiff agreed to purchase, the business, fixtures, and license for the
business conducted by the defendant in and upon said premises,
as also all of the said real estate for a gross sum; that after the
subject-matter of said purchase had been verbally agreed upon
between plaintiff and defendant, and their contract was about
to be reduced to writing, the defendant through inadvertence, or
otherwise, misstated the frontage and depth of the said real es-
tate; and that, relying upon such statement or representation,
the said real estate was, in said agreement, erroneously—that
means inaccurately—described as having a frontage of "about
60 feet" with a depth of about 200 feet, then the jury are at
liberty to reject so much of such description in said agreement,
as was so recited by reason of such inadvertent statement, or
otherwise, if, with the aid of parol testimony admitted in evi-
dence, they are able to determine what property is referred to
in the agreement of sale offered in evidence.

"4. If the jury should find for the plaintiff, then, in assessing
the damages which they may find the plaintiff is entitled to re-
cover, they may take into consideration, as they shall find them
from the evidence, the difference in the market value of the

property agreed to be sold by the defendant to the plaintiff, and the purchase price agreed to be paid by the plaintiff, and the amount paid by plaintiff to the defendant on account of the said purchase price."

The following special instructions, among others, asked by the defendant, were granted:

"4. If you believe upon all the evidence that when the defendant signed the contract of April 27, 1905, mentioned in the testimony, he understood it did not include and was not intended to include the whole of his tract of land mentioned in the testimony, your verdict will be for the defendant.

"5. If you believe upon all the evidence that when the defendant signed the contract of April 27, 1905, mentioned in the testimony, the plaintiff then and there understood that he would receive thereunder any portion less than the whole of what is described in the deed which was presented to the defendant for execution, your verdict will be for the defendant."

The following special instructions asked by the defendant were refused, and he reserved an exception to the action of the court in rejecting each of them:

"1. You will return a verdict for the defendant.

"2. If you find upon all the evidence that the fair cash value of the property included in the written contract dated April 27, 1905, between the plaintiff and the defendant and mentioned in the testimony, including the defendant's bar-room license and the good will of the bar-room business conducted by him under said license, and so much of the real estate owned by the defendant and upon which he was then conducting said business as was necessary for the convenient operation of said business and having a front of 60 feet more or less on Brightwood avenue, with a depth of 200 feet more or less, together with the fixtures thereon used and required for use in and about said business, was less than $12,000 at the time when the plaintiff's attorney returned to the defendant's attorney the check for $250, as shown in the evidence, you will, in your verdict, award damages to the defendant for the difference between the said fair cash

value and the sum of $12,000, less said sum of $250; provided such difference, if any, exceeds $250.

"3. If you believe, upon all the evidence, that the defendant when he signed the written contract of April 27, 1905, mentioned in the testimony, intended said contract to include therein the license, good will, and fixtures of his bar-room business; together with a part and not all of his real estate fronting on Brightwood avenue, and mentioned in the testimony, your verdict will be for the defendant."

"6. If you believe upon all the evidence that the plaintiff . Loffler, when the contract of April 27, 1905, was written by Richard, did not know the dimensions of the tract of land owned by the defendant, Harten, fronting on Brightwood avenue and mentioned in the testimony, and was satisfied to pay and intended to pay $12,000 for the license, fixtures, and good will of Harten's bar-room business, together with so much of said tract as was necessary for the conduct of said business, amounting to 60 feet front more or less by a depth of 200 feet, more or less, your verdict will be for the defendant."

"9. If you believe upon all of the evidence that the witness Richard wrote the contract of April 27, 1905, at the request and on behalf of the plaintiff, Loffler, and that while he was writing it he asked, 'What is the size of this place?' or words to that effect; that thereupon Andrew Loffler suggested 60 feet; that the defendant Harten then and there referred Richard to the description in his liquor license to show the location of the property, and assented to the statement then made by some other person or persons there present as to the dimensions of the property; that nothing was then said to call Harten's attention to the fact, if it was a fact, that the plaintiff, Loffler, was expecting to get the entire tract under the contract, your verdict will be for the defendant Harten.

"10. It was the duty of the plaintiff to investigate and ascertain for himself the value of Harten's business; and if you believe upon all the evidence that he was misinformed by Harten as to the amount of the receipts of the business, but that he did not rely upon what Harten told him as to the said receipts, and

that he knew or should have known that the receipts of the business did not amount to as much as was stated by Harten, and that he was not misled by such statement, you will not consider the said statement as having any bearing upon the question of the value of the business, or as affecting the measure of damages.

"11. It was the duty of the plaintiff to investigate for himself as to the dimensions of the entire tract in question, if he thought he was buying the entire tract, and if you believe upon all the evidence that the plaintiff or the witness Richard knew or should have known at the time Harten signed the contract of April 27, 1905, that the front of the entire tract was 85 feet, or much more than 60 feet, and was not 'about' 60 feet, your verdict will be for the defendant."

"14. Your verdict must be the result of your concurrence upon the facts established by the evidence. In reaching such a result it is the duty of each juror to stand by his own individual judgment and understanding, and not to surrender to the views of other jurors. In case of apparent inability to concur in a verdict, it is proper that you should express to each other your reasons for your respective opinions based wholly upon the evidence, and to endeavor in that way to agree upon a verdict, which shall be in accordance with the weight of the evidence and the instructions given you by the court.

"15 The intention of the parties to the written contract of April 27, 1905, must prevail. Their intention is to be ascertained, if possible, from the words of the written contract itself, according to the meaning of such words, in their ordinary acceptation and everyday use, and every word in the contract is to be considered as a part of the expression of the intention of the parties. Any doubt as to the meaning of the words used in the contract should be determined in favor of the defendant."

The jury returned a verdict for the plaintiff in the sum of $1,250, with interest on $250 thereof from April 27, 1905, and from the judgment thereon the defendant appealed.—Reporter.]

*Mr. Lorenzo Bailey* for the appellant.

*Mr. Leon Tobriner* and *Mr. Preston B. Ray* for the appellee.

Mr. Justice McComas delivered the opinion of the Court:

The first, sixth, and eighth assignments of error raise the question of the admissibility of the parol testimony we have stated, which tended to show in what sense the word "about" was used in the agreement, and to what property the agreement applied.

The writing in controversy was drawn by an unskilled person. Uncertainty arose concerning the property to which it applied. The court below admitted this parol evidence of the surrounding circumstances and the negotiations preceding and accompanying the execution of the paper, to ascertain and make plain the intent of the parties and the meaning of their contract so far as it was uncertain, and especially to determine the subject-matter of the contract, particularly the meaning of the word "about" in its collocation.

"Contracts, where their meaning is not clear, are to be construed in the light of the circumstances surrounding the parties when they were made, and the practical interpretation which they, by their conduct, have given to the provisions in controversy." *Lowber* v. *Bangs,* 2 Wall. 728, 737, 17 L. ed. 768, 769.

The courts are disposed to uphold a contract drawn by a person unskilled in the use of legal terms, when in the contract there appears a reasonably sufficient description of its subject-matter. When all the circumstances of ownership, possession, and situation of the parties, their relation to each other and to the property, when the negotiations took place, and when the writing was made, are disclosed, if the meaning and application of the writing, read in the light of those circumstances, is certain and plain, the parties will be bound by it as a sufficient written contract. If a party who enters into an agreement in fact owns a parcel of land answering the description, and only one such, that must be regarded as the one to which the description refers; and if the language used includes the whole parcel, and though some chattels on the property be excluded, and no

part of the parcel of real estate be excepted, and if the negotiations plainly show that, at the time the writing was made, all the parties to the negotiations treated of the whole parcel and nothing less, and nothing other than the whole parcel, the extrinsic evidence which makes certain the description of the property included in the sale is admissible to give effect to what was intended, but what was not clearly expressed. See *Mead* v. *Parker,* 115 Mass. 415, 15 Am. Rep. 110; *Slater* v. *Smith,* 117 Mass. 98; *Farmer* v. *Batts,* 83 N. C. 392.

Extrinsic evidence is not admissible to explain a patent ambiguity, that is, one apparent on the face of the instrument, but is admissible to explain a latent ambiguity, that is, one not apparent on the face of the instrument, but one arising from extrinsic evidence; for this is but to remove the ambiguity by the same kind of evidence as that by which it is created. Extrinsic parol evidence is admissible to give effect to a written instrument by applying it to its proper subject-matter. As Chief Justice Alvey has said: "It is a well-settled principle in the law of evidence that parol evidence may be received in aid of written evidence, in order either to establish a particular document, or to apply it to its proper subject-matter, or to explain it, if its terms be of doubtful import; or to rebut some presumption which affects it. Light is generally thrown upon these questions by proof of the circumstances surrounding the parties and with reference to which the written document was made." *Whelan* v. *McCullough,* 4 App. D. C. 63; *Okie* v. *Person,* 23 App. D. C. 182; *Atkinson* v. *Cummins,* 9 How. 479, 486, 13 L. ed. 223, 227. The use of the term "fronting on Brightwood avenue *about* 60 feet, with a depth of *about* 200 feet," when these exact measurements would cut off one seventh of a house and a narrow apex of a triangular lot, while all other terms describing the property to be sold would include the whole dwelling and the whole lot, made the case before us an instance of a latent ambiguity. Thereupon the construction given by the parties themselves, as shown by their acts and admissions, may be proved by parol testimony to solve this latent ambiguity. In giving effect to a written contract by applying it to its proper

subject-matter, extrinsic evidence may be admitted to prove the circumstances under which it was made, whenever without the aid of such evidence such application could not be made in the particular case. *Bradley* v. *Washington, A. & G. Steam Packet Co.* 13 Pet. 89, 99, 10 L. ed. 72, 77.

It is true, this contract was for the sale of land, but for most purposes the statute of frauds has neither added to nor taken away from the stringency of the rules of the common law in regard to the admission of parol evidence to affect written contracts. Browne, Stat. Fr. sec. 409. Nor was there any variance between the contract offered in evidence and that declared on. *Warfield* v. *Booth,* 33 Md. 63. The court below committed no error in admitting the parol testimony involved in the first, sixth, and eighth assignments of error.

The second, third, fourth, and fifth assignments of error relate to the measure of damages, and to evidence concerning damages suffered by the plaintiff by reason of the breach of the contract sued on. The measure of damages, as stated by the court, was the difference between the purchase price and the market value at the time of the contract of sale. The evidence to prove damage, bearing in mind that the contract of purchase included not only the entire real estate, but the expected benefit of the license, the business, and the good will, included evidence of the value of each of these; and in admitting it the court committed no error.

Nor did the court err, as claimed in the seventh assignment of error, in admitting the deed tendered by the appellant in connection with the tender of the purchase money to the appellee. The testimony of Hood, who communicated to Loffler Harten's desire to sell this business and property, which induced the negotiations between Loffler and Harten, was properly admitted.

And we find no error in the testimony excluded and referred to in the ninth assignment of error. The transactions between the appellant and Brady had no relation to the contract between the parties to this suit. Nor was the proffered evidence and understanding between the appellant and his wife, that he would reserve a part of the property, an offer of relevant evidence. Nor

did the court err in excluding the testimony of the witness Montague. We find no error under this ninth assignment.

The tenth, eleventh, and twelfth assignments of error relate to the rulings of the court after the close of the testimony. The court did not err in refusing to instruct the jury to return a verdict for the defendant. The second prayer was correctly refused. The question for the jury was not what was the fair cash value of a part of the property, but whether or not the party for $12,000 had made a contract for the sale of the whole property. Nor was the third instruction improperly refused, for it limited the jury, in construing the contract, to the defendant's intent; and the sixth instruction limited the jury to the plaintiff's intent in making the contract. Two minds must meet to make a contract. For this reason the court erred in granting the fourth and fifth prayers of the appellant. Without discussing in detail the ninth, tenth, eleventh, fourteenth, and fifteenth instructions asked for by the defendant, suffice it to say, we find no error in their refusal by the court below. Nor did the court err in granting the first, second, third, and fourth instructions on behalf of the plaintiff. In the instructions granted upon both sides and in the oral charge by the court, we think the case was fairly presented to the jury; and the court committed no reversible error.

The judgment of the court below must be *affirmed, with costs, and it is so ordered.*

An application by the appellant for a writ of error to the Supreme Court of the United States, made May 9, 1907, was allowed, and the writ issued May 10, 1907.