SAND FILTRATION CORPORATION OF AMERICA *v.* COWARDIN.

APPEAL FROM THE COURT OF APPEALS OF THE DISTRICT OF COLUMBIA.

No. 123. Argued April 6, 1909.—Decided April 26, 1909.

In the absence of a clear showing of its incorrectness this court accepts the finding of the lower courts.

The object of construction of a contract is to effectuate the intention of the parties in making it; and it should be interpreted in the light of the circumstances surrounding the parties at the time when it was made.

Although contracts relating to the same subject may be dated the same day they need not be construed together as one instrument if all the parties to both are not in privity.

An agreement to pay a sum out of profits of a contract *held*, in this case, not to depend on whether profits were or were not realized by a subcontractor but only on whether such profits were realized by the party making the contract.

29 App. D. C. 571, affirmed.

THE facts are stated in the opinion.

*Mr. A. S. Worthington,* with whom *Mr. Charles L. Frailey* was on the brief, for appellant.

*Mr. Charles Cowles Tucker* and *Mr. Reginald S. Huidekoper,* with whom *Mr. J. Miller Kenyon* was on the brief, for appellees May and Jekyll.

*Mr. J. J. Darlington* filed a brief in behalf of appellees Cowardin, Bradley, Clay and Stagg.

MR. JUSTICE DAY delivered the opinion of the court.

This case presents a question as to the proper construction of a certain contract. It arises as follows: Cowardin, Bradley, Clay

& Company, hereinafter called the Cowardin Company, had a contract with the Government of the United States for the construction of a filtration plant in the city of Washington. In the partial performance of the contract they had expended about $1,300 in money and had contracted debts somewhat in excess of $14,000. Afterwards, on May 26, 1903, the Cowardin Company sublet the contract to the appellees May and Jekyll. By this contract May and Jekyll agreed to reimburse the Cowardin Company for their expenditures; to pay the liabilities incurred by them, and to complete the work for 90 per cent of the contract price, permitting the Cowardin Company to have 10 per cent thereof as its profit. And further, May and Jekyll agreed to lend the Cowardin Company $10,000, and to furnish $50,000 for the purchase of a plant for doing the work. On August 25, 1903, May and Jekyll made a new contract with the Cowardin Company, surrendering their subcontract, executed a bill of sale to the Cowardin Company of the plant by which the work was being done, and as to the debts which May and Jekyll had contracted the Cowardin Company agreed to assume the same, and to procure the assumption thereof by any one who might undertake to complete the contract. The plant, including that purchased with the $50,000, was to be transferred to the Cowardin Company, and all the property to be conveyed in trust to certain trustees to secure the payment of the debts of May and Jekyll. As to the $10,000 advanced by May and Jekyll under the contract of May 26, 1903, of which $8,000 remained unpaid, the following stipulation was made:

"Inasmuch as the parties of the second part [May and Jekyll] have heretofore advanced to the parties of the first part [Cowardin Company] the sum of $10,000 under the eighth paragraph of said contract of May 26, 1903, and there now remains due to the said parties hereto of the second part .$8,000 thereof, $2,000 having been paid thereon, the parties of the first part hereby covenant and agree to repay the parties of the second part, or to their order, the said sum of $8,000 out of the net profits which may be realized by the parties of the first part

from the construction or erection of that portion of said filtra-
tion plant which they have contracted with the United States
to construct or erect. The said $8,000, if the same shall not be
sooner voluntarily paid by the parties of the first part to the
parties of the second part shall be reserved and paid out of the
10% of the contract price for said work which will be reserved
by the United States; and if the parties of the first part shall
not themselves continue said work under their contract with the
United States, but shall procure some third party or parties to
perform the same, or if the same shall be performed by any
person or persons on behalf of the parties hereto of the first
part appropriate provision shall be made for the reservation and
payment of said $8,000 to the parties hereto of the second part;
it being distinctly understood and hereby declared to be the
purpose of this agreement that the repayment of the $8,000
shall be under the contingency that the parties of the first part
shall realize a profit under said contract with the United States,
and not otherwise; and that if any profit shall be so realized
by them, it shall be subject to the payment of the said $8,000,
or so much thereof as said profit will pay and satisfy."

On the same day, August 25, 1903, the Cowardin Company
made a contract with one Dean, whereby, in consideration of
the sale to Dean and Shibley, afterwards the Sand Filtration
Corporation of America, appellant in this case, of the filtration
plant and of the employment of appellant by a receiver to be
appointed, to complete the work, Dean agreed to pay to the
receiver $65,000 in instalments; to complete the work, and
further "to comply with the provisions and conditions of one
certain agreement entered into between the grantors (Cowardin
Company) and May and Jekyll, a copy of which is hereto at-
tached and to be read as a part thereof, including, among other
provisions, the payment of the sum of $8,000 to the said May
and Jekyll, as in the said agreement is provided, and the pay-
ment of which is also assumed by the said grantee (Dean)."

As under the law the Cowardin Company could not assign
the contract with the Government, and as the company was in

financial difficulties, it was agreed that the receiver to be appointed for the Cowardin Company should enter into a contract with the Sand Filtration Corporation, successor of Dean, for the carrying out of the provisions of the contract of August 25, 1903, with the Cowardin Company. A receiver was appointed and a contract made, and on August 27th a further contract was entered into, whereby it was agreed that the receiver was to deduct from the money to be paid by the Government, as the work progressed, the sum of $65,000, and also the sum of $8,000 therein mentioned, and to pay the same directly to the Cowardin Company instead of paying it to Dean, and then receiving it back from him.

The Sand Filtration Corporation of America, successor to Dean, completed the work, and, as the record shows, at a loss of $100,000 or more. Pleadings were framed and issues made up, presenting to the court the question whether the receiver should be ordered to pay the sum of $8,000 to the Sand Filtration Corporation of America, appellant, or to May and Jekyll, under the contracts hereinbefore set forth. Upon hearing in the Supreme Court of the District of Columbia the court directed that this sum be paid by the receiver to May and Jekyll. From this decree the Sand Filtration Corporation of America appealed to the Court of Appeals of the District of Columbia, and that court affirmed the decree of the Supreme Court of the District. 29 App. D. C. 571. The case was then appealed here.

As we have said, the single question in this case is whether, under the facts recited, this $8,000 should go to the appellant as successor to Dean, or to May and Jekyll, as the courts below have held. It is insisted for appellant that the proper construction of the contract required payment of the $8,000 to May and Jekyll only upon the contingency that a profit should be realized under the construction contract with the United States; that is to say, if the construction of the filtration plant proved to be a profitable job then May and Jekyll were to be paid $8,000, or so much thereof as the profits would pay. The record discloses that appellant, successor of Dean, not only

made no profits, but on the contrary lost a large sum of money.

Upon the pleadings and testimony the lower courts have found, and we accept the finding in the absence of a clear showing of its incorrectness, that, without doing the work, the Cowardin Company has made out of the contract a sum in excess of $8,000 paid from the sums coming from the United States on account of the contract, in manner aforesaid.

The object of construction is to effectuate the intention of the parties in making a given contract. When the contract is in writing the language used should be interpreted in the light of the circumstances surrounding the parties at the time the contract was made. It is contended by the learned counsel for the appellant that the agreements of August 25, 1903, were cotemporaneous, and must be construed together as one agreement, and that the effect of such construction is to require the payment of $8,000 to May and Jekyll only in the event that the contract should prove profitable, and as no profit was realized from the construction nothing is to be paid. But while these contracts were dated the same day, whether they were executed at the same time or not does not appear, and certainly Dean was not in privity with May and Jekyll. The $8,000 was to be paid out of moneys reserved coming from the Government, and upon the contingency that a profit should be realized by the Cowardin Company. There was no agreement that the payment of this sum should be upon the contingency that any sub-contractor, such as Dean and his successor, should make a profit out of the contract. If such was the intention of the parties it is not so written in the contract. May and Jekyll were to have the money advanced by them repaid if "the party of the first part," the Cowardin Company, "shall realize a profit, under said contract." It is clear that the Cowardin Company did make a profit, and we are unable to see that it makes any difference that it was realized in the manner we have detailed, rather than from the construction of the work. The substance of the agreement between the Cowardin Company and May

and Jekyll looked to the repayment of the money advanced in case the Cowardin Company realized a profit. This it has done, and we think the conditions of the contract have been kept.

It is suggested by the learned counsel for the plaintiff in error that as the profit of $65,000 was realized by the Cowardin Company by the agreements of August 25, 1903, and as they were cotemporaneous, the agreement for payment of the $8,000 only in the contingency of profit cannot mean the $65,000 so realized by the execution of the papers, but had reference to future profits in doing the work.

But it is to be noted that the Cowardin Company was the only party contracting with the United States, and had Dean thrown up the contract or failed to complete the construction of the work the Cowardin Company would still have been held on their contract and bond. Until Dean or his successor completed the work the Cowardin Company was not absolved from liability so far as the Government was concerned, and it could not be known whether a profit would be made or not.

As the Cowardin Company did realize such profit as required the payment of the $8,000 to May and Jekyll by the receiver out of the sums received from the Government, the courts below were right in so ordering.

The judgment of the Court of Appeals of the District of Columbia is affirmed.

*Affirmed.*

Dissenting: MR. JUSTICE McKENNA and MR. JUSTICE MOODY.