WISCONSIN CLUB, Respondent, vs. JOHN, imp., Appellant.

*October 16—November 11, 1930.*

478

For the appellant there was a brief by *Herbert R. Manger*, attorney, and *Bender, Trump, McIntyre & Freeman* of counsel, all of Milwaukee, and oral argument by *Mr. Manger*.

For the respondent there was a brief by *Shaw, Muskat & Sullivan* of Milwaukee, and oral argument by *James D. Shaw*.

FOWLER, J. The stock subscription agreement and the provision printed on the face of the stock certificates constitute a contract and fix the rights of the club and the company stockholders. Appellant makes several contentions to the contrary: (1) Appellant claims that under the statute existing at time of the organization of the company the agreement above mentioned is void. He relies in support of this contention upon sec. 1775, Sanborn & Berryman's Ann. Stats. 1889, which provided at the time of the organization of each corporation that one corporation could not take or hold the stock of another except upon consent of three fourths of the holders of the stock of each corporation to be signified by action of the stockholders at a special or general stockholders' meeting, and claims that as no such action was ever taken at a stockholders' meeting the provision on the face of the stock certificates of the company,

although showing conclusively that all stockholders of the company gave their assent, does not validate the agreement. But before defendant's stock was demanded by the club the statute had been amended to empower one corporation to procure and hold stock of another without the assent of the stockholders, and at the time of the demand upon defendant no action by stockholders was necessary to authorize the club to take and hold company stock. Sec. 182.01 (9), Stats. 1927. Appellant argues that the stock agreement was void because not authorized previous to its execution by the stockholders in the manner designated by the 1889 statute and cites *Kappers v. Cast Stone Const. Co.* 184 Wis. 627, 200 N. W. 376, in support of his contention. But this case does not hold that a subscription so made could not be enforced if after it was made the stockholders of the corporations should act as the statute required. The subsequent action of the stockholders would render the contract valid. In the instant case under the 1889 statute, action of the stockholders at the time the transfer was about to be effected would have rendered the contract enforceable. The amendment of the statute has had the same effect by dispensing with the assent of stockholders.

(2) Appellant next contends that the provision that the club could buy at any time requires by implication that the club must exercise its option within a reasonable time. It is true that such a provision ordinarily carries such an implication. But where it is plain from the circumstances that the option might be exercised when the party given the option was in position to act, attempt to exercise the option at that time is timely. Also, what is a reasonable time depends in any case upon the circumstances, and in view of the circumstances and the purpose and the contemplation of the parties here the time of exercising the option was reasonable. It was originally contemplated that the club would procure the property in 1918 when the original mortgage bonds became

due. When this time came, an extension of time of ten years was procured, which deferred occasion for completed action until 1928. In the meantime members of the club had been procuring gifts and assignments of the stock to be in position to effect the original purpose in 1928, and that purpose was then effected except as to the defendant's one share of stock. In this situation the demand upon the defendant was made within a reasonable time.

(3) Appellant contends that by asking defendant to state the price for which he would transfer his stock to the club and sign an option to the club for its purchase at such price, the plaintiff waived or released its right to exercise its original option. This is untenable. The purpose of the request was to ascertain how many would donate their stock and how many would transfer it for less than the stipulated amount. It was at all times understood by the club that it might purchase or redeem at the stipulated price. It is plain that the club did not intend to forego that right. A waiver is an intentional act; an intentional relinquishment of a known right. Acts under some circumstances without express intent may be such as to indicate such intent, and when they are, waiver is inferred, but here the circumstances refute such intent.

(4) Appellant contends that receipt by the club of the option signed by him created a new contract binding the club to purchase at the price stated therein if it purchased at all. This does not follow. The club already had a binding contract for purchase at a less price. Ignoring the option entirely, by throwing it in the waste basket, did not create a new contract to purchase superseding the one it already had. The position, and consequently the rights, of neither party was at all changed by defendant's returning a signed option to the plaintiff and plaintiff's ignoring its return.

(5) Appellant contends that the contract evidenced by the stock certificate is void under the statute of frauds because not signed by the party bound thereby to sell. Sec.

241.02. The provision in the stock certificate is to be considered only as part of the original transaction. The stock subscription was a part of that transaction also. That subscription was signed by defendant's donor and constituted a sufficient "memorandum" of the transaction. so that his signature thereon bound him to carry out its terms. The defendant by accepting the stock was bound by the provision written on the face thereof. His signed letter to the company asking for a new certificate in his own name and his signed receipt of such new certificate constitute memoranda signed by him sufficient to bind him by the provision for sale on the face of the stock if the mere fact that he stands in his donor's place and has no greater rights than his donor is not of itself sufficient to bind him.

(6) The appellant claims lastly that the plaintiff's case is without equity. This claim is entirely without merit. The scheme was formed solely for the benefit of the club. It has been carried through to fulfilment solely for the club's benefit. It was not contemplated that the company or its stockholders could or would make profit. Defendant's donor was fully apprised of the purpose of the company and its duty, and subscribed for his stock in expectation that that purpose would be fulfilled and that duty performed, and that he would not and in any event could not get back more than his original contribution and three per cent. interest. It would be inequitable to permit him to exact more than was originally contemplated. The defendant stands in no better position. He paid nothing for the stock. In getting what the certificate calls for he is getting all he is equitably entitled to. It is manifest that the company took title to the property and held it merely as trustee for the club and neither the company nor its stockholders can be permitted to profit from its trusteeship.

*By the Court.*—The judgment is affirmed.

FAIRCHILD, J., took no part.