HARRY STASEK v. MARSHALL-WELLS COMPANY.
M. P. HILBER v. SAME.[1]

June 7, 1935.

Nos. 30,299, 30,300.

*Mitchell, Gillette, Nye & Harries,* for appellant.
*McCoy & Hansen,* for respondents.

HILTON, JUSTICE.

These appeals involve two actions, one by Harry Stasek and the other by M. P. Hilber, tried together to a court and a jury. Defendant having unsuccessfully moved for a directed verdict in each case, moved the court after verdicts against it for judgment notwithstanding the verdicts or for a new trial. The appeals are from the orders denying those motions.

[1]Reported in 261 N. W. 398.

Defendant is a corporation organized under the laws of the state of New Jersey. It has for many years been engaged in the hardware wholesale and jobbing business, having its principal plant at Duluth, Minnesota, and numerous branches and factories throughout the United States and Canada. Its articles of incorporation provided for the issuance of common stock, preferred stock, and coöperative preferred stock. Of the latter there are outstanding 2,192 shares of the par value of $219,200. It is coöperative preferred stock that is involved in these actions. Such stock was issued specially for purchase by the employes of defendant under an arrangement giving purchasers thereof the right to have the stock redeemed upon giving the required notice. The provision relative thereto was a part of the certificate of stock and also was incorporated in the articles of incorporation and provided as follows:

"Upon receiving not less than one (1) year's notice in writing preceding any dividend date from the record holder of any Co-operative Preferred stock of such holder's desire that such stock be redeemed, the corporation shall, upon said dividend day, redeem such stock by paying to such owner in cash or by check, or crediting to such owner upon the books of the company at the time of such redemption, the par value of such stock, together with all accrued and unpaid dividends, if any, thereon."

If an employe to whom stock certificates were issued remained in active service of defendant for five years after such issuance and at the expiration of that period still held and owned the certificates, he was entitled to a bonus of $20 per share upon not more than two shares, and $20 per share upon not more than two additional shares for each year thereafter.

Plaintiffs are former employes of defendant, having been in its employ for many years. Stasek owned 26 shares of the stock involved, acquired at various times between 1913 and 1927; Hilber owned 27 shares, acquired between 1909 and 1927, and three bonus certificates of $20 each. Each plaintiff gave defendant the required notice to redeem the stock as of January 1, 1933. Defendant refused to do so, and these actions followed. The defense was and

is that to make redemption of the stock defendant would have to go into liquidation, which would cause a heavy shrinkage of values and prejudice the rights of its creditors. The only question submitted to the jury was whether defendant could pay plaintiffs' claims, amounting to $5,740 and interest, without prejudice to the rights of the creditors of defendant. There is some argument in the briefs as to the effect of the redemption provision in the articles of incorporation with regard to the priority of plaintiffs' claims. Whether or not such provision was notice to those subsequently becoming creditors of defendant so as to give preference to purchasers of such stock we are not here called upon to decide. By its instructions the court placed the burden upon plaintiffs to prove "by a fair preponderance of the evidence that at any time since January 1, 1933, the defendant has been in such a financial condition that it could pay the plaintiffs' claims without prejudice to the rights of the creditors to collect their indebtedness of the defendant." No exceptions were taken to the court's charge, and there are no assignments of error here that question anything but the sufficiency of the evidence by which plaintiffs sought to sustain that burden and which the jury found did sustain it. In its brief defendant states its claim thus:

"That from the evidence the plaintiffs did not sustain the burden of proof of showing that the redemption of this stock could be made without prejudice to the rights of its creditors."

In its memorandum the court stated:

"The only assignment of error argued is that the verdict is not justified by the evidence and is contrary to law.

"No exception was taken to the charge. If there was evidence reasonably tending to support the verdict, it must stand. Defendant claims there was not, and presents a very exhaustive and able brief which was interesting to read; but it seems to the court that there was such ample evidence to support the verdict that a review of the cases cited could have but an academic interest."

After carefully considering the evidence, we agree with the trial court that there was "ample evidence to support the verdict." De-

.fendant's balance sheet of December 31, 1932, introduced in evidence, showed total assets of $12,664,405.45 and liabilities of $1,730,323.83. By the inclusion as liabilities of $10,970,800 for outstanding capital stock at par value there was a deficit of $36,718.38. The current assets, less a reserve for bad debts of $264,412.86, totaled $3,436,254.15, of which $25,996.34 represented cash in banks and on hand; the total current liabilities amounted to $1,662,160.41. Several of defendant's wholly owned subsidiaries had assets greatly in excess of their liabilities. One of the subsidiaries had assets of $3,613,635.99 and liabilities of $773,653.59, a net worth of $2,839,982.40; another had assets of $1,503,161.88 and liabilities of $437,898.49, a net worth of $1,065,263.39; a third had assets of $1,738,050.73 and liabilities of $245,562.19, a net worth of $1,492,488.54. In 1932 defendant pledged all its bills receivable and the capital stock of its subsidiaries to the banks as collateral security for money loaned. During 1932 defendant paid the sum of $1,226,015.46 upon that indebtedness, reducing it from over $2,000,000 to less than $1,000,000. During 1933, while claiming inability to pay plaintiffs' claims for $5,740, defendant increased its stock of merchandise by $321,270.92. The balance sheet as of December 31, 1933, showed customers' accounts and notes receivable at $1,391,897.20 after a deduction of $500,000 as a "reserve for losses on realization." The president of defendant testified that the company did a business of over $6,000,000 during 1933.

Without going further into the evidence we conclude that it justified the jury's affirmative answer to the question put to it as to whether defendant could pay plaintiffs' claims without prejudice to the rights of its creditors. There is evidence indicating that demands for redemption totaling $95,000 have been made. Whether defendant is, or was at any time since January 1, 1933, in such financial condition that it can pay or could have paid $219,200, the par value of all the outstanding coöperative preferred stock, or the $95,000 for which claims have been filed, we are not, on the state of the record, called upon to say. The only claims submitted to the jury were those of these plaintiffs. The total amount thereof was but $5,740 plus interest from the date the jury might find the de-

fendant was in a position to pay those claims without prejudice to creditors. The amount of interest awarded indicates that the jury determined January 1, 1933, as the date upon which the defendant could so have paid the claims. The evidence sustains that determination.

Affirmed.

STONE, JUSTICE (concurring in the result).

I concur in the result simply because there is evidence to support the jury's finding that the claims of these two plaintiffs fixed by the jury at a total of $5,740 could be paid "without prejudice to the rights of its creditors."

The question is not before us, but I entertain some doubt whether plaintiffs are stockholders rather than creditors. What purports to be preferred stock is not preferred stock simply because it is so called. If in fact not stock at all, it is not governed by the principles applicable to stock "but by those relating to the thing that it really is." Heller, Hirsch & Co. v. National Marine Bank, 89 Md. 602, 611, 43 A. 800, 801, 45 L. R. A. 438, 441, 73 A. S. R. 212. There being before us no decision of the question of fact whether all of the so-called "coöperative preferred stock" could be redeemed without prejudice to creditors, I submit that we should say that our decision is without prejudice to the solution of that question when and if it is presented.

LORING and JULIUS J. OLSON, JUSTICES.

We concur in the views of Mr. Justice Stone.