**NATIONAL BANK OF COMMERCE IN MEMPHIS v. UNITED STATES.**

Civ. No. 1409.

United States District Court
W. D. Tennessee, W. D.
Jan. 10, 1949.

303

———◆———

W. G. Boone, Memphis, Tennessee, for plaintiff.

Theron L. Caudle, Assistant Attorney General, Andrew D. Sharpe and Courtnay C. Hamilton, Special Assistants to the Attorney General, for defendant.

DARR, District Judge.

This action was brought for the refund, with interest, of $3,460.73 of Federal Income Tax paid under protest.

In January, 1933, the Bank of Commerce & Trust Company, a state institution, hereinafter called the Old Bank, was in extreme financial difficulties. After much consideration and effort the persons in control of the Old Bank fell upon the plan of organizing a new national bank. A new bank was organized under the name of National Bank of Commerce in Memphis, the plaintiff in this case. For clarity the plaintiff will be referred to herein as the New Bank.

At the time of organization the New Bank had a capital structure of $2,000,000, which amount was furnished by the Old Bank in exchange for all the New Bank's capital stock, except the qualifying shares. In addition to this exchange many other features were within the purview of the plan. The New Bank was to take over certain assets belonging to the Old Bank and assume proportionately the deposit liability of the Old Bank. The trust accounts in the Old Bank were to be worked into the New Bank insofar as possible. The title and abstract business maintained by the Old Bank had to be taken over by a newly organized corporation as the New Bank could not handle that character business under a federal charter.

Ultimately the Old Bank was to be fully liquidated and each of its stockholders was to have stock in the New Bank proportionately, at such time as stock could be exchanged. The stock in the New Bank had been hypothecated by the Old Bank as security for loans.

It is unnecessary to go into further plans except as pertain to the subject matter of this litigation, but it might be observed that the plan worked successfully, the stockholders in the Old Bank receiving the last of their stock in the New Bank in 1947.

The controversy here concerns the transfer of the bank building and equipment from the Old Bank to the New Bank. This transfer occurred on January 9, 1937, and was for a consideration of $950,000. This money was used to reduce indebtedness owing by the Old Bank.

The New Bank makes the claim that the transfer of the building and other physical properties was a step in the unitary plan of reorganization. Therefore, the New Bank contends that by reason of the provisions of section 112(b) (4) of the Internal Revenue Code as modified by section 112(e), 26 U.S.C.A. § 112(b) (4) and 112(e), no loss from the exchange should have been recognized. The New Bank also claims that the same result is reached by the application of sections 112(b) (3) and (5) as modified by section 112(e), 26 U.S.C.A. §§ 112(b) (3) and (5) and sec. 112(e).

The defendant's position is that the transfer of the property was a sale for cash and the basis of value for tax purposes was the cost to the New Bank as determined by the Commissioner.

A preliminary question must first be decided.

There is scant reference in the records of the New Bank and the Old Bank concerning the acquiring of the building and other

physical properties by the New Bank. At the trial oral proof was introduced and heard with the understanding that its competency would be determined along with the adjudication of the case.

■ In view of the fact that the records of the directors' and stockholders' meetings of the Old Bank and the New Bank make some mention of the acquisition of the banking house and fixtures by the New Bank, but are not clear on that question, I am of the opinion that oral evidence may be considered. Fox v. Johnson & Wimsatt, 75 U.S.App.D.C. 211, 127 F.2d 729, note 12, page 735; Cory v. Hamilton Nat. Bank, 6 Cir., 31 F.2d 379.

Taking the testimony as a whole, the conclusion is reached that there was in the minds of the persons in control of both the Old Bank and the New Bank that it would be desirable and advantageous for the New Bank to acquire the building and equipment from the Old Bank. I think such was the situation at the time of the formation of the New Bank, but that the proposition was very indefinite and uncertain. There was no reason the New Bank might not have moved into new quarters had it appeared to be advantageous to it and no reason the Old Bank could not have sold to other parties.

In view of the tie-up between the two there perhaps would not have been a sale by the Old Bank unless the New Bank had been adequately quartered. Some four years elapsed from the time of the formation of the New Bank until the transfer of the building and equipment. The property was not acquired until the New Bank was in financial condition to do so.

■ An element in a plan of reorganization that cannot be legally enforced and, in addition is fraught with much uncertainty, is indefinite and not necessary to the reorganization, cannot be considered as one of the steps resulting in the completed transaction.

■ I reach the conclusion that there was a reorganization of the Old Bank into the New Bank and that the New Bank was a party thereto under the provisions of section 112(g) (1) (D) and section 112(g) (2)

of the Internal Revenue Code, 26 U.S.C.A. § 112(g) (1) (D) and sec. 112(g) (2).

■ But I am of the opinion that the transfer and acquisition of the banking house and equipment was a sale for cash and a transaction to be separately tested against the statutory provisions. This particular transaction, therefore, was not within the scope of a statutory reorganization, but was a sale for cash, the cost price being the basis for tax purposes.

This view was the position taken by both banks as evidenced by the fact that the transaction was recorded in their books and records as a sale and the Old Bank on its sworn income tax return for 1937 reported a loss from the sale. The same control was in charge of both banks and now the same controlling authority has reversed its position in this litigation.

It would seem that the New Bank's claim in this case would be under section 112(b) (4) as modified by section 112(e), but if it be that the provisions of section 112(b) (3) and (5) as modified by section 112(e) are applicable to the facts, the New Bank's position cannot prevail for the same reasons above indicated.

The fact that the interest and control of the Old Bank and the New Bank were the same is not sufficient for the relief sought by the New Bank. The way of the taxpayer must square all the corners of the statute. He cannot take a short cut even though it be a righteous path to the same destination. Rugel v. Commissioner of Internal Revenue, 8 Cir., 127 F.2d 393; Quintana Petroleum Co. v. Commissioner of Internal Revenue, 5 Cir., 143 F.2d 588; Co-Operative Oil Ass'n Inc. v. Commissioner of Internal Revenue, 9 Cir., 115 F.2d 666.

■ The New Bank also makes claim for the same relief based on section 113(a) (8), 26 U.S.C.A. § 113(a) (8). The New Bank has not pressed this point either in brief or argument and it is sufficient to say that the property here must be treated as merely an asset used in a trade or business and not as paid-in surplus.

The defendant is awarded a judgment. Findings will be submitted.