**Lathrop DOUGLASS**

v.

**FIRST NATIONAL REALTY CORPO-RATION, Appellant.**

**No. 23938.**

United States Court of Appeals, District of Columbia Circuit.

Nov. 9, 1970.

Petition for Rehearing Denied Jan. 21, 1971.

ment alone would constitute plain error meriting reversal.

Mr. Mark P. Friedlander, Sr., Washington, D. C., was on the brief for appellant. Mr. Harry P. Friedlander, Washington, D. C., also entered an appearance for appellant.

Mr. Harry S. Weidberg, Washington, D. C., was on the brief for appellee.

Before McGOWAN and LEVENTHAL, Circuit Judges, and JOHNSON *, Chief Judge, United States District Court for the Middle District of Alabama, in Chambers.

PER CURIAM:

This appeal is from the District Court's grant of appellee's motion for summary judgment, awarding architect's fees for services rendered. We affirm for the reasons set out below.

Appellant corporation proposed to construct an eight-story office building in suburban Maryland. Accordingly, on January 7, 1964, it entered into an agreement with appellee for architectural plans. Under the terms of this agreement, appellant was to pay appellee three and one-half percent of the project construction cost, 75% of which was payable upon the furnishing of certain construction documents. The following contract provision established the method of computing the construction cost:

IV PROJECT CONSTRUCTION COST

1 Project construction cost as herein referred to means the total cost of all work designed or specified by the Architect, but does not include any payments made to the Architect or consultants.

2 Project construction cost shall be based upon one of the following sources with precedence in the order listed:

a) Lowest acceptable bona fide contractors proposal received for

---

* Sitting by designation pursuant to 28 U.S.C. § 292 (c) (1964).

any or all portions of the Project.

b) Estimate of project construction cost as defined in paragraph 4 below.

c) The Architect's latest statement of probable project construction cost based on current area, volume or other unit costs.

\* \* \* \* \* \*

4  If a fixed limit of project construction cost is stated herein, or if otherwise authorized by the Owner, estimates of the project construction cost prepared in semi-detailed or detailed form by an experienced estimator will be secured by the Architect during the Design Development or Construction Documents Phase.

Appellee furnished appellant with the necessary construction documents on November 2, 1964, which was within the time specified by the agreement. However, due to appellant's inability to acquire adequate financing for the project, appellee was never paid. Therefore, on June 5, 1967, appellee filed a complaint for architect's fees arising out of the services rendered. Because it could not locate the contract which was alleged in the complaint, appellant responded with a general denial on June 23, 1967. Having discovered that it had signed the contract sued upon, appellant on September 24, 1969, sought leave of court to file an amended answer under Rule 15(a) of the Federal Rules of Civil Procedure. This motion was subsequently granted. However, after obtaining several continuances, appellant filed its amended answer more than a month later than the time prescribed by the District Court.

In the meantime, on July 14, 1969, appellee had filed a motion for summary judgment, supported with documents, papers, depositions, and affidavits in accordance with Rule 56, Fed.R.Civ.P. One of the depositions accompanying the motion was of a vice president of one of appellant corporation's affiliates. He stated that he had prepared a project construction cost estimate of $2,582,459 which was eventually proffered by appellant to a construction loan company in order to obtain financing.

Appellant's opposition to the foregoing motion consisted solely of an affidavit by the president of appellant. The thrust of the affidavit was that officers of appellant corporation had been unable to locate the agreement and were not aware of its terms until it had read the appendix of the above mentioned deposition which contained a copy of the agreement. With its memory refreshed, it was now invoking the arbitration clause in the agreement, as well as claiming that the construction cost had never been determined and that the method of payment was to be made through construction draws, *i. e.*, no money was to be paid to appellee unless financing was obtained.

On December 19, 1969, the motion for summary judgment came on for hearing. At that time, appellant again sought leave of court to file an amended answer. Upon consideration of the failure of appellant to take advantage of the previous extensions, the trial judge denied the motion.[1] He then granted appellee's motion for summary judgment and assessed damages of $69,503.56 (which was based on the $2,582,459 estimate), with interest from November 2, 1964 (the date on which the construction

---

1. We recognize and support the modern trend of giving the Federal Rules a liberal gloss in order to encourage the disposition of suits on the merits. However, appellant's procrastination in this matter was potentially prejudicial to the appellee, and we do not find that the District Court abused its discretion in denying appellant's second motion for leave to amend his answer. *See* Sheridan-Wyoming Coal Co., Inc. v. Krug, 84 U.S.App.D.C. 288, 290, 172 F.2d 282, 284, rev'd on other grounds, Chapman v. Sheridan-Wyoming Coal Co., 338 U.S. 621, 70 S.Ct. 392, 94 L.Ed. 393 (1950).

documents were due and on which they were delivered), plus reimbursable expenses of $1,714.01 and costs of this action. Appellant thereafter filed a motion for rehearing, claiming that the trial judge's computation of the construction cost was incorrect. This motion was also denied and appellant filed this appeal.

Appellant raises two issues which are worthy of discussion. The first claim is that the affidavit of the president of appellant raised material issues of fact which made the grant of the motion for summary judgment improper. *See* Dewey v. Clark, 86 U.S.App.D.C. 137, 180 F.2d 766 (1950). However, the assertions made in the affidavit were related to the legal construction of the contract. They were matters of law rather than of fact, and they did not, accordingly, warrant the denial of a motion for summary judgment.[2] *See* Fox v. Johnson & Wimsatt, Inc., 75 U.S. App.D.C. 211, 127 F.2d 729 (1942).

Appellant's second contention is that the trial judge improperly computed the construction cost. It is argued that the contract preferentially established three methods for the determination of the construction cost: *i. e.*, the lowest bona fide contractor's proposal received; or an estimate authorized by the owner-builder which was to be supplemented by an estimate of the architect; or the architect's latest statement of probable projected construction cost based on current area, volume, or other units. Appellant claims that the esti-

mate which it presented to a finance company does not fit within any of the above categories. However, it appears to us that the use of this authorized figure is in accordance with the second category. While it is true that the express language of the contract called for an estimate on the part of the architect as well, it is obvious that this requirement was merely a safeguard against an attempt on the part of a builder to deflate his costs. It appears, however, that such a safeguard is unnecessary in this matter since appellee, in effect, has stipulated that the owner's authorized estimate is accurate. Hence, we believe that the trial court's computation of damages was correct.[3]

Affirmed.

2. We note that the issue in question was not whether there were damages, but how damages were to be estimated—a question of law, rather than fact. *Compare* Sartor v. Arkansas Natural Gas Corp., 321 U.S. 620, 64 S.Ct. 724, 88 L.Ed. 967 (1944) *with* Madeirense Do Brasil S/A v. Stulman-Emrick Lumber Co., 147 F.2d 399 (2nd Cir. 1945).

3. On appeal, it was urged by appellant that the damages were also incorrectly computed because appellee, in an attempt to settle with appellant, had predicated its fee on an estimated construction cost of $1,500,000. Therefore, appellant asserts

that this latter estimate fits within the terms of the contract. However, a quick perusal of appellee's estimate demonstrates that it did not reach the degree of specificity required by the contract. However, even if this estimate had been properly computed, the contract terms indicate a preference for the authorized estimate of the builder-owner. This was the estimate used by the court, and it is only logical that such an estimate should be preferred since the builder-owner has the necessary access to the details that are needed to accurately formulate the estimate.